U0NITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LORENZO PUGLIESE,

                Plaintiff,

   -against-

THE LONG ISLAND RAIL ROAD COMPANY, &
RICHARD COLE, CHRIS GLAUDINO, NANCY
GREER & GEROME PETRONOLIA, *Individually
& In Their Official Capacities,*

                Defendants.
----------------------------------------------------------------X

<u>MEMORANDUM & ORDER</u>

01 CV 7174 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Lorenzo Pugliese ("Pugliese" or "Plaintiff") filed the instant discrimination suit against his employer, Defendant Long Island Rail Road Company ("LIRR"), as well as LIRR ticket clerk Richard Cole ("Cole"), LIRR station cleaner Chris Glaudino ("Glaudino"), Pugliese's former manager Nancy Greer ("Greer"), and LIRR employee Gerome Petronolia/Jerome Petronilia ("Petronilia"), individually and in their official capacities (collectively "Defendants"). Pugliese claims that Defendants engaged in a pattern and practice of discrimination on the basis of his sexual orientation as a homosexual male and their perception that Pugliese did not conform to the stereotypes of his gender, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and New York Human Rights Law. Specifically, Pugliese brings this lawsuit under 42 U.S.C. § 1983 ("§ 1983") and New York City Administrative Code Section 8-107. (Complaint 1-2.)

      The parties conducted discovery under the supervision of Magistrate Judge Marilyn Go.

Defendants LIRR, Petronolia, and Greer ("moving Defendants"), subsequently moved for summary judgment as to each of Pugliese's claims. On September 19, 2006, this court issued an Order granting in part and denying in part Defendant's motion ("the Order"). On October 3, 2006, Defendants filed the instant motion for reconsideration. On October 13, 2006, Plaintiff filed his opposition, and on October 27, 2006, Defendants filed a reply. Familiarity with the facts of this case are presumed.

**I.     STANDARD OF REVIEW**

Under Local Civil Rule 6.3, a party may move for reconsideration of a motion by "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." However, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The applicable standard is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." Lykes Pasco v. Ahava Dairy Prods. Corp., No. 97-CV-0652, 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998) (Glasser, J.) (internal quotations omitted).

**II.    DISCUSSION**

    **A.     Bobby Wright Incident**

Defendants first claim that this court considered a time-barred instance of alleged harassment in making its summary judgment determination. (Memorandum of Law of Defendants the Long Island Rail Road and Nancy Greer in Support of their Motion for

Reconsideration ("Def. Mem.") at 5-6.)  Defendants are incorrect.  While it is true that the Bobby Wright incident is time-barred, the court did not rely on this incident as a basis for any of Pugliese's claims.  Rather, the Bobby Wright harassment allegation was simply included in the Order as background evidence to the harassment claim.  See United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977) ("[A] discriminatory act which is not made the basis for a [lawsuit] . . . may constitute relevant background evidence in [the lawsuit]."); see also Doe v. Vill. of Mamaroneck, 462 F. Supp. 2d 520, 550 n.3 (S.D.N.Y. 2006); Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F. Supp. 2d 288, 296 (S.D.N.Y. 2005).  Defendants' motion with respect to the Bobby Wright incident is therefore denied.

### B. Plaintiff's Filing of Complaints

Defendants next allege that Plaintiff did not file complaints with respect to either the Cole or the Glaudino incidents, and they therefore contend that this court erred in determining that Defendants failed to take action on Plaintiff's behalf.  (Def. Mem. at 6-7, 10.)  Specifically, Defendants claim that Plaintiff's statement to Greer that Cole was intending to file a false harassment claim against Pugliese did not constitute a complaint warranting investigation.  (Id.)  Although it is a close question, a reasonable juror could find that Plaintiff's report to Greer that Cole intended to falsely accuse Plaintiff of sexual harassment, coupled with Cole's actual complaint, which did in fact allege that Plaintiff sexually harassed him, provided Greer with sufficient notice that Plaintiff believed that he had been sexually harassed by Cole.  Consequently, a reasonable juror could conclude that this is sufficient to have constituted a "complaint" of sexual harassment filed by Plaintiff with Greer.

Regarding the Glaudino incident, Defendants allege that Plaintiff did not file a complaint

3

with Greer against Glaudino, and therefore they contend that Greer was not required, and had no basis upon which, to conduct an investigation into Glaudino's conduct. (Def. Mem. at 10.) Greer stated at her deposition that she had had a conversation with Plaintiff about the Glaudino complaint, and that Plaintiff requested that Greer "disciplin[e]" Glaudino for having filed false allegations against him. (Greer Deposition at 51.) Again, this is a close question, and one with which a jury may disagree. However, a reasonable juror could find that these statements sufficiently established that Pugliese had filed a complaint with Greer that Glaudino had filed a false complaint against him.

Defendants further contend that even if Pugliese had filed such complaints, Greer was not "required" by LIRR policy to have conducted an investigation and that "Diversity Management is responsible for investigating complaints of harassment." (Def. Mem. at 8-9.) Specifically, Defendants allege that the court based its ruling on the court's "statement that Greer was 'required' to investigate" Plaintiff's complaint. (Id. at 9 (citing Order at 3).) Defendants mischaracterize the Order. I based my ruling on the fact that Greer had a responsibility to either "contact appropriate personnel or to investigate" Plaintiff's sexual harassment complaint. Although, at this juncture in the litigation, both Plaintiff and Defendant have failed to clearly set forth Greer's responsibilities, it appears from her own statements that she did, in fact, have a responsibility to contact "appropriate personnel" or personally investigate harassment claims that are brought to her attention. (See Greer Deposition at 19-21, 66.) And, there is evidence that she actually conducted investigations based upon other employees' sexual harassment complaints. (See id. at 46-49, 57.) Her failure to do either when confronted with Plaintiff's sexual harassment complaints is what forms the basis of Plaintiff's Complaint.

4

Although neither party briefed the issue, the court notes its concern regarding proof that Greer actually failed to investigate Plaintiff's complaints. Plaintiff's complaints were essentially that multiple individuals had leveled false complaints about Plaintiff. Essentially, then, because Greer investigated the veracity of the complaints filed against Plaintiff, she investigated the legitimacy of Plaintiff's complaints. The court declines to address this issue, however, since it was not originally briefed by the parties and is therefore inappropriate to now address it in a motion for reconsideration. In any event, the court recognizes that it is possible for Plaintiff to adduce evidence at trial that Greer did not investigate Plaintiff's claims as thoroughly as she had investigated claims of similarly situated persons.

### C. Discriminatory Intent

Defendants next claim that there is no evidence to support the court's finding that a reasonable juror could conclude that Cole or Glaudino filed false complaints against Plaintiff with discriminatory intent, or that Greer's failure to investigate Plaintiff's complaints was done as a result of discriminatory intent. (Def. Mem at 9-11, 20-21.) However, the question of intent is a question of fact properly left to the jury to decide. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). In any event, intent may be proven by circumstantial evidence. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996); Belfu v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1995). Certainly, the jury could conclude, based upon the evidence of the graphic sexual nature of Cole's and Glaudino's complaints, that both Cole and Glaudino were motivated to file complaints based solely upon Pugliese's sexuality. Similarly, the jury could properly find that Greer, who investigated the complaints of other employees yet instructed Plaintiff to forget about his complaint, acted with discriminatory intent as well.

### D. Hearsay

Defendants allege that the court improperly relied upon hearsay in evaluating the alleged incidents of harassment by both Petronilia and Cole. (Def. Mem. at 11-14.) With respect to Petronilia, Defendants claim that the court improperly relied upon Pugliese's testimony that he had heard from other LIRR employees that Petronilia had made disparaging comments about Plaintiff. (Id. at 12-14.) Specifically, Defendants assert that these statements do not fall within the scope of Fed. R. Evid. 801, and thus constitute impermissible hearsay.

Rule 801 provides that a "statement by a party's agent or servant concerning a matter within the scope of the employment, made during the existence of the relationship" is admissible for the truth of the matter asserted. Fed. R. Evid. 801(d)(2)(D). The Second Circuit has construed this to mean that statements regarding employment matters are within the scope of a declarant's employment if the declarant was "an advisor or other significant participant in the decision-making process that is the subject matter of the statement." United States v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996). Indeed, "the [declarant] need not be the 'final decisionmaker' on employment matters for his statement on those matters to be deemed within the scope of his agency. Rather, he need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement." Id.

In this case, the nature of the alleged misconduct is fundamentally different from the misconduct cited in cases relied upon by Defendants. In those cases, the alleged misconduct related to the hiring and firing decisions made by a company or organization -- decisions that fell exclusively within the scope of employment of only certain supervisory employees. In this case, however, the harassment at issue was allegedly based upon the activities of multiple non-

supervisory employees. Because Petronilia solicited other employees to harass Plaintiff, the decision to harass or not harass Plaintiff was made by multiple individuals, including 1) the station cleaners who, according to Plaintiff, overheard disparaging comments by Petronilia, and 2) the station agents, who, according to Plaintiff, overheard Cole soliciting other employees to file false complaints of harassment against Plaintiff. The hearsay statements at issue made by all of these individuals – the station cleaners and agents who were privy to the alleged harassment – and concerning Petronilia's decision to harass Plaintiff and seek others to do the same, reflect the station cleaners' and agents' decisions to not participate in the alleged harassment. Therefore, their statements regarding those events constitute party admissions and, as such, are admissible and were properly considered by this court.

With respect to the Cole incident, Plaintiff affirmed that after Cole had been disciplined as a result of Plaintiff's complaint against him, Cole filed a retaliatory complaint of sexual harassment against Plaintiff. (Plaintiff Affirmation ¶¶ 14, 18.) Defendants now allege that the court relied on hearsay statements by Plaintiff that Police Officer Ramos ("Ramos") had told Plaintiff that the sexual harassment complaint filed by Cole was retaliatory, and that Cole had requested that Ramos, too, file sexual harassment complaints against Plaintiff. (Def. Mem at 14; Plaintiff Affirmation ¶ 15.) Although the statements of Ramos are hearsay and are neither admissible at trial nor properly considered by the court in the motion at issue, the court did not, in fact, consider Ramos's statements in its Order. Rather, Plaintiff's statement that he had filed a complaint with Greer regarding Cole's misbehavior and that Cole thereafter filed a false complaint of sexual harassment with Greer was sufficient to support Plaintiff's claims.

7

### E. Evidence that Plaintiff was Similarly Situated

Defendants next contend that Cole and Glaudino, who had filed complaints with Greer, were not "similarly situated" to Plaintiff because there is no evidence as to their sexuality. (Def. Br. at 15-16.) Defendants note that Cole, in fact, had filed a complaint with a supervisor eight years earlier alleging that he had been harassed "for being gay." (Def. Br. at 16 (citing Plaintiff's Affirmation at ¶ 22).) And, Defendants note that according to Plaintiff, at the conclusion of Greer's investigation into Glaudino's complaint, she concluded that he was "unsure of his sexuality and felt rejected by [Plaintiff]." (Id. (citing Plaintiff's Deposition at 63).) Plaintiff has failed to respond to this argument.

As Defendant acknowledges, this case does not involve discrimination based upon a readily apparent characteristic, such as race or gender. See id. Therefore, what Greer knew about either Cole or Glaudino's sexuality is speculative at best. While the issue of whether either Cole or Glaudino is "similarly situated" to Plaintiff deeply troubles the court, since there is evidence to suggest that both Cole and Glaudino may, in fact, be homosexuals, I nevertheless find that it is not unreasonable for a juror to assume that Greer believed these men to have been heterosexual, especially in light of the fact that she stated at her deposition that she had "no firsthand knowledge" that any employees other than Plaintiff identified themselves as being homosexual. (See Greer Deposition at 73.)

Defendants next contend that Cole's and Glaudino's filing of a false complaint against Plaintiff did not constitute "sexual harassment" as defined by LIRR policy. Therefore, Defendants argue, Plaintiff was not "similarly situated" to Cole and Glaudino, who did file complaints of a sexual nature – namely, complaints which alleged that Plaintiff made sexual

8

advances towards them. (Def. Mem. at 7-9.) It is a close question as to whether the complaint about the filing of multiple false complaints of sexual harassment constitutes sexual behavior. Such a complaint, however, would inevitably lead to an investigation in which Plaintiff and others would be extensively questioned about alleged acts of a sexual nature. For this reason, and because inclusion of these claims would not alter the scope of the trial, I find that a reasonable juror could conclude that Plaintiff is similarly situated to both Cole and Glaudino.

## F. Municipal Liability under 42 U.S.C. § 1983

Defendants next assert that the court incorrectly found that Greer had "authority to investigate claims of discrimination or harassment, to choose discipline based on her findings, and to dismiss employees." (Def. Br. at 17 (citing Order at 8).) Defendants now contend that Diversity Management solely maintained the authority to conduct investigations into harassment complaints, citing the statement of Mercedes Commodore, Executive Director of the LIRR Diversity Management Department:

> Pursuant to the LIRR Sexual Harassment Policy, Diversity:
> Management is responsible for promptly and thoroughly
> investigating complaints of sexual harassment and making results
> of the investigation known to the parties involved.

(Id. at 17-18 (citing Commodore Affidavit 7).) As neither party contests, Diversity Management certainly maintained the ability to investigate complaints of sexual harassment. However, although Defendants now accuse the court of "ignor[ing] the sworn testimony of a high-ranking LIRR official" (Def. Br. at 18), there is nothing in Commodore's statement that precludes Greer from also maintaining the power to conduct such an investigation. In fact, as previously noted, Greer's own statements provide proof to the contrary. (See Greer Deposition at 19-21, 46-49, 57,

9

66.) Therefore, Defendants' contention must fail.

Defendants next challenge this court's finding that Greer was a policy-maker and had final decision-making power within the LIRR. (Def. Br at 17-20.) As detailed in the underlying Opinion, I find these issues to be close, yet Defendants' arguments are ultimately unpersuasive.

It is axiomatic that "the municipality cannot properly be held liable in such an action unless the injury was inflicted by [its] lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotations and citations omitted). According to documents submitted by the LIRR, Greer's job description states that she has "complete authority" for making decisions regarding "discipline of employees to include dismissal." (Defendants' Reply Declaration Ex. B, Subpart C at 4.) Greer had authority to investigate claims of discrimination or harassment, to choose discipline based on her findings, and to dismiss employees. LIRR policy demonstrates that Greer's actions "may fairly be said to represent official policy" for actions involving discipline, including the results of investigations of discrimination. And, despite Defendants' assertion that Greer had to have been a "high-ranking official" in order to be considered a policy-maker (see Def. Br. at 20), that simply is not the case. Although being of high rank may go to whether or not an individual retains policy-making authority, the sole question is whether an individual is a policy- and decision-maker for the entity at issue. See St. Louis v. Praprotnik, 485 U.S. 112, 123 (U.S. 1988) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.") (internal quotations and citations omitted). That Plaintiff could theoretically "appeal" this decision to the union, a third party (see Def. Br. at 19-20), does not alter Greer's status as a final decision-maker for the LIRR. Therefore, examining

the facts in the light most favorable to the Plaintiff, I uphold my earlier finding and deny Defendants' motion.

### G. Greer's Personal Liability

Greer argues that the case of <u>Romer v. Evans</u>, 517 U.S. 620 (1996) "bears no resemblance to the case *sub judice*," and that Greer therefore was not on notice that discrimination based upon sexuality could be violative of Plaintiff's constitutional rights. (Def. Br. at 22.) After careful re-examination of the record and controlling caselaw, I am persuaded by Defendants' argument. While the Supreme Court ruled in <u>Romer</u> that discrimination on the basis of sexual orientation *could* violate the Equal Protection Clause of the Constitution, there is nothing to indicate that the Supreme Court determined that such a constitutional violation would necessarily result. Therefore, even viewing the facts in the light most favorable to the Plaintiff, I must conclude that a reasonable juror could not find that Greer was sufficiently put on notice of the potential legal implications of discriminating based upon Plaintiff's homosexuality. Greer is therefore granted summary judgment on all Section 1983 claims, rendering the remainder of her objections to the Order moot.

### H. Adverse Employment Action

Defendants now claim that I erred in determining that whether Plaintiff suffered an "adverse employment action" by being transferred to the Syosset station was an issue of fact for the jury. (Def. Br. at 24-25.) The evidence in the record, read in the light most favorable to the Plaintiff, establishes that in his current position, Plaintiff earns $0.99 less than in his previous position at the Flatbush station. That Plaintiff had earned more money during several of the years in which he worked at the Syosset station is presumably because he worked more hours.

That does not in any way mitigate the fact that he was paid less for his time. Whether his transfer to another station was an "adverse employment action," or was merely a "purely lateral transfer," as Defendants assert (see id. at 25), is properly a question for the jury.

### III. CONCLUSION

For the reasons set forth above, Greer's motion for reconsideration with respect to her individual liability for § 1983 claims is hereby GRANTED. Defendants' motion for reconsideration on all other grounds is hereby DENIED.

SO ORDERED:

    /s/ Nicholas G. Garaufis
Nicholas G. Garaufis
United States District Judge

Dated: August 29, 2007
       Brooklyn, New York