UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
LORENZO PUGLIESE,

              Plaintiff,               **MEMORANDUM AND ORDER**

      v.                                       01-CV-7174 (NGG)

THE LONG ISLAND RAILROAD COMPANY,
NANCY GREER, and GEROME[1] PETRONILIA,
Individually and In Their Official Capacities,

              Defendants.
------------------------------------------------------X

GARAUFIS, United States District Judge.

**I.    Background**

Plaintiff Lorenzo Pugliese ("Pugliese") brings this lawsuit under 42 U.S.C. § 1983 and New York City Administrative Code Section 8-107 ("New York City Human Rights Law") alleging that Defendants The Long Island Railroad Company ("LIRR"), Nancy Greer ("Greer"), and Gerome Petronilia ("Petronilia") (collectively "Defendants") engaged in a pattern and practice of discrimination on the basis of his sexual orientation as a homosexual male and a perception that Plaintiff did not conform to the stereotypes of his gender. (November 19, 2007 Joint Pretrial Order (Docket Entry #51).) On January 2, 2008, Defendants filed a motion in limine to preclude certain evidence from trial. On January 7, 2008, Pugliese filed his opposition to the motion.

For the reasons set forth below Defendants' motion is GRANTED in part and DENIED in

---

[1] Although the case caption lists this defendant's first name as "Gerome," the parties' submissions refer to him as "Jerome."

1

part. Familiarity with the background facts of this case and the particulars of the claims that remain for trial is assumed.

**II.     Discussion**

As an initial matter, although Plaintiff contends otherwise, all claims against Defendant Petronilia, including those brought under the New York City Human Rights Law, have been dismissed pursuant to this court's September 19, 2006 Memorandum and Order. (See Docket Entry #39 at 23.)

As for the substance of Defendants' motion, the district court's "wide latitude in determining whether evidence is admissible at trial" is, of course, applicable to each of Defendants' evidentiary challenges discussed in turn below. Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 250 (2d Cir. 2006).

   A.     Bobby Wright Incident

Defendants first argue that testimony about alleged "anti-gay" remarks by Plaintiff's then supervisor Bobby Wright ("Wright") are inadmissible because the remarks do not form the basis of Plaintiff's claim and their probative value is outweighed by their prejudicial effect. (Memorandum of Law in Support of Defendants' Motion in Limine ("Defendants' Br.") at 12.) Plaintiff responds that the statements and Defendants' alleged failure to address them provide background evidence of Defendants' discriminatory intent and are probative of Defendants' lack of responsiveness to Plaintiff's complaints. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions [sic] In Limine ("Plaintiff's Br.") at 2.)

The court agrees with Plaintiff and will allow testimony about Wright's statements incident because the statements and Defendants' response, or lack thereof, to them constitute

relevant background evidence in this case. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176-177 (2d Cir. 2005) (in the employment discrimination retaliatory discharge context, "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act.").

In addition, the court concludes that allowing testimony about Wright's statements is unlikely to cause prejudice to Defendants. Even assuming the testimony might cause some prejudice, that prejudice would not substantially outweigh the testimony's probative value in this case. See Fed. R. Evid. 403. Defendants' motion to preclude testimony about Wright's alleged statements is therefore denied.

### B. Statements Allegedly Attributable to Richard Cole and Jerome Petronilia

Plaintiff alleges that he was informed by a station cleaner that Petronilia referred to Plaintiff as a "fucking queer and faggot" and made other similar comments, and that Petronilia instructed the station cleaner not to follow Plaintiff's directions. Plaintiff does not allege that he heard these comments himself. (Defendants' Br. at 13.) Defendants argue that Petronilia's statements "may be admissible" against Petronilia as party admissions, but that because all claims against him have been dismissed, the statements are inadmissible hearsay. (Id. at 15-16.) Plaintiff responds that the statements are admissible as party admissions. (Plaintiff's Br. at 3.)

As Defendants note, whether or not Greer and the LIRR declined to discipline Petronilia for making offensive statements about Plaintiff remains an issue for the jury as the trier of fact. (Defendants' Br. at 15.) If so offered, Petronilia's statements would not be offered "for the truth of the matter asserted" and thus would not constitute hearsay. See Fed. R. Evid. 801(c) (defining

3

"hearsay" as an out-of-court-statement "offered in evidence to prove the truth of the matter asserted"). Furthermore, the court found in its August 29, 2007 Memorandum and Order that Petronilia's statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D) because they constitute statements by a party's agent or servant. See 801(d)(2)(D) (a statement is not hearsay if the statement is offered against a party and is a "statement made by a party's agent or servant concerning a matter within the scope of the employment, made during the existence of the relationship"). Accordingly, Defendants' motion with respect to Petronilia's statements is denied.

As for Cole's statements, Plaintiff responds that he "will seek to elicit Cole's statements and attitudes from alternative means to avoid the need for resolution of [the hearsay] issue." (Plaintiff's Br. at 3.) The court reserves decision on the admissibility of those "alternative means" until such time as Plaintiff seeks to use them.

C. Prior Good Acts of Plaintiff

Defendants argue that Plaintiff should not be allowed to introduce three letters of commendation for his work at LIRR because they are not relevant and are inadmissible attempts to bolster Plaintiff's credibility. (Defendants' Br. at 16.) Plaintiff responds that he will seek to admit this evidence only if his work performance or dedication to the LIRR is questioned or placed at issue by Defendants. (Plaintiff's Br. at 3.)

In the event that Defendants seek to call Plaintiff's work performance or dedication into question at trial, the court will assess the admissibility of the letters of commendation at that time.

4

D. Defendants' Request for an Adverse Inference Charge

Plaintiff has testified that he secretly recorded a conversation with Metropolitan Transit Authority Police Officer Al Ramos ("Ramos") in which Ramos can be heard saying that Cole asked Ramos to tell others that Plaintiff repeatedly massaged Cole's buttocks and that plaintiff wanted to "fuck [Cole] in the ass." (Defendants' Br. at 17.) Plaintiff has not produced the tape and has testified that the tape cannot be located. (Id.) Defendants argue that if the tape were produced, it would not support Plaintiff's claims, and would thus support their argument that they did not possess sufficient evidence to discipline Cole for filing a false complaint. On this basis, Defendants request an adverse inference charge based on spoliation of evidence. (Id. at 19.)

Plaintiff responds that "there is not a scintilla of evidence" that Plaintiff destroyed the tape. Thus, Defendants have not established that the destruction was done "knowingly" or with a "culpable state of mind." (Plaintiff's Br. at 19.)

Defendants are not entitled to an adverse inference charge because they have not offered any evidence of intentional destruction, bad faith, or even gross negligence on Plaintiff's part in failing to preserve the tape. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-08 (2d Cir. 2001) (noting that the law in this circuit is not clear on what state of mind a party must have when destroying evidence, with some cases requiring intent, other requiring bad faith, and still others requiring only gross negligence; "[i]n light of this, we concluded a case by case approach was appropriate"). Defendants' request for an adverse inference charge is denied.

E. Audiotape of Conversation with Martin Grant

Defendants argue that an audiotape of Plaintiff's subordinate, Martin Grant, discussing

5

certain "work place [sic] gossip" is inadmissible hearsay. (Defendants' Br. at 19-20.) Because Plaintiff states in his response that he does not intend to admit the audiotape at trial except for possible impeachment purposes (Plaintiff's Br. at 4), the court will rule on the admissibility of the tape should Plaintiff seek its admission for such purposes.

  F. <u>Prior Bad Acts of Richard Cole</u>

Defendants argue that Plaintiff should be precluded from raising Coles's prior disciplinary history and the fact that Cole was previously arrested. (Defendants' Br. at 20.) Defendants concede, however, that the discipline Cole received through the Trial Waiver he signed on December 13, 2000 is admissible as background. (<u>Id.</u> at 20 n.5.) Plaintiff responds that he will not seek to introduce Cole's disciplinary history, except for possible impeachment purposes and as background, as agreed to by Defendants in their brief at page 20 n5. (Plaintiff's Br. at 5.)

Due to Plaintiff's stated intent not to seek introduction of Cole's bad acts except for impeachment or to the extent explicitly agreed to by Defendants, the court reserves decision on their admissibility at this time. The court notes, however, that Plaintiff states merely that he will not seek to introduce Cole's "disciplinary history" but does not specifically respond to Defendants's request that Cole's prior arrest be precluded. For the sake of clarity, the court construes "disciplinary history" to include that arrest. Thus, its admission is precluded except for possible impeachment purposes as well.

  G. <u>Richard L. Zazlow's Treatment Summary</u>

Plaintiff states that he will not seek to introduce this treatment history. (Plaintiff's Br. at 5.) As such, the court need not address this issue.

H. <u>Bifurcation of Trial for Purposes of Punitive Damages</u>

Defendants argue that the trial should be bifurcated with regard to the issue of punitive damages for Greer and that a determination of punitive damages should be delayed until resolution of the liability and compensatory damages phase of the trial in order to avoid prejudice to Greer. (Defendants' Br. at 24.) Plaintiff consents to bifurcation in this respect. (Plaintiff's Br. at 5.)

As both parties consent to bifurcation and since such an approach is "appropriate," see <u>Queenie, Ltd. V. Nyugard Int'l</u>, 321 F.3d 282, 285, n.1 (2d Cir. 2003), Defendants' request for bifurcation is granted as to determining punitive damages, if necessary, with respect to Greer.

## III. Conclusion

For the foregoing reasons, Defendants' Motion in Limine is GRANTED in part and DENIED in part.


SO ORDERED.


|  | s/Nicholas G. Garaufis |
|---|---|
| Dated: January 16, 2008 | NICHOLAS G. GARAUFIS |
| Brooklyn, N.Y. | United States District Judge |